**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF VIRGINIA**
**ALEXANDRIA DIVISION**

| | |
|---|---|
| PRECISION FRANCHISING LLC,<br>  a Virginia limited liability company,<br><br>Plaintiff,<br><br>v.<br><br>T&S HOLDINGS, INC.<br>  a Washington corporation, and<br><br>TODD A. EVANS,<br>  a Washington citizen,<br><br>Defendants. | Case No. 1:23-cv-00858 |

## <u>COMPLAINT</u>

1.      This action for breach of contract arises from Defendants' breaches of a Franchise Agreement that they entered into with Plaintiff Precision Franchising LLC ("PFL"), pursuant to which Defendants operate a Precision Tune Auto Care franchised automotive service center. Defendants systematically and routinely failed to make any of their contractually required local marketing expenditures since 2020. Defendants' actions constitute material breaches of the Franchise Agreement and have caused and are continuing to cause PFL to suffer irreparable injury to its brand and reputation and to incur monetary damages including costs and attorneys' fees.

2.      PFL seeks a declaration that Defendants' conduct violates the terms of the Franchise Agreement, monetary damages in an amount to be determined at trial, and permanent injunctive relief requiring Defendants to satisfy their marketing obligations for the remainder of the term of the Franchise Agreement.

## PARTIES

3.     Plaintiff PFL is a Virginia limited liability company with its principal place of business at 748 Miller Drive SE in Leesburg, Virginia. PFL is wholly owned by Precision Tune Auto Care, Inc., a Virginia corporation with its principal place of business at 748 Miller Drive SE in Leesburg, Virginia.

4.     Defendant T&S Holdings, INC. ("TSH") is a Washington corporation with its registered office in Olympia, Washington. According to publicly available information from the Washington Secretary of State, TSH was administratively dissolved and inactive as of March 3, 2023.

5.     Defendant Todd A. Evans ("Evans") is a natural person and, upon information and belief, a citizen of the State of Washington, and an owner of a 100% interest in TSH.

## JURISDICTION AND VENUE

6.     The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a). The parties are citizens of different states, and the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

7.     This Court has *in personam* jurisdiction over Defendants because they entered into contracts in this district and caused injury in this district by their acts and omissions. In addition, Defendants entered into a Franchise Agreement by which they agreed to submit to the jurisdiction of this Court. Specifically, under Section 26.1 of the Franchise Agreement Defendants irrevocably submitted to the jurisdiction of this Court and waived all questions of personal jurisdiction. The Franchise Agreement is attached hereto as **Exhibit A**.

8.     Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims against Defendants occurred in this district.

2

In addition under Section 26.1 of the Franchise Agreement, Defendants agreed to submit to the exclusive venue of this Court. Additionally, pursuant to a Guaranty Agreement, Evans also agreed to be personally bound by any provisions of the Franchise Agreement relating to the choice of forum and venue. The Guaranty Agreement is included in the Franchise Agreement as Schedule 6.5.

## BACKGROUND FACTS

### The Precision Tune Auto Care System

9.      PFL is the franchisor of the Precision Tune Auto Care system. It is engaged in the business of franchising independent business persons to operate automotive service centers identified with the Precision Tune Auto Care service mark and related marks and logos. Franchisees operate under the Precision Tune Auto Care system, which involves the retail sale of automotive products and services, including lubrication, oil changes, brake products, and related services, utilizing unique and specialized training, marketing techniques and materials, and operational procedures; uniform standards, specifications, and procedures for products, equipment, and services; distinctive appearance; advertising and promotional programs; and proprietary information. Franchisees receive a license to use the trademarks, service marks, trade names, logos, and trade dress of Precision Tune Auto Care in exchange for, among other things, the payment of operating and advertising fees.

### The Parties' Franchise Agreement

10.      Effective January 27, 2020, TSH entered into a Precision Tune Auto Care Franchise Agreement with PFL for the operation of a Precision Tune Auto Care center at 4828 Bridgeport Way West, University Place, Washington 98467 (the "Center") (Ex. A).

11.     Defendant Todd Evans executed a Guaranty Agreement, dated January 11, 2020, personally guaranteeing TSH's obligations under the Franchise Agreement.

12.     The initial term of the Franchise Agreement is for a period of ten years from the Effective Date, and therefore expires by its terms on January 27, 2030, unless terminated sooner as provided therein.

## Defendants' Obligations Under The Franchise Agreement

13.     Pursuant to the Franchise Agreement, Defendants assumed the rights and obligations to operate their franchised business utilizing the Precision Tune Auto Care trade name, trademarks, trade dress, and the Precision Tune Auto Care System.

14.     Pursuant to Section 13.1 of the Franchise Agreement, Defendants agreed that they would pay PFL or its designee (or spend as directed by PFL) advertising fees equal to nine percent (9%) of their Center's weekly gross sales,[1] but not less than $360 per week.

15.     Defendants further agreed that in the event PFL or its designee established a national advertising fund, a regional advertising fund for the region in which the Center is located, and/or a local advertising cooperative in Defendants' area, Defendants would contribute to each

---

[1] Section 4.6 of the Franchise Agreement defines the term "gross sales" as:

> [T]he amount of sales of all products and services sold in, on, about, or from the Center by Franchisee, whether for cash, barter or on a charge, credit or time basis, without reserve or deduction for inability or failure to collect, and including income of every kind and nature related to the Franchised Business. Gross sales shall not include the amount of any excise or sales or use tax levied on retail sales and payable over to the appropriate governmental authority. In computing gross sales, Franchisee may deduct the amount of over-rings, refunds, allowances, or discounts to customers (including coupon sales) provided that such amounts have been included in gross sales and provided that Franchisee complies with the requirements, including time limits, established by Franchisor from time to time in writing.

fund such amounts as PFL may designate from time to time, but not to exceed a total of nine percent (9%) of gross sales. (Franchise Agreement at §§ 13.2, 13.2.1-13.2.3.)

16.     Defendants further agreed that if at any time their total required contribution to the national advertising fund, an applicable regional advertising fund, and/or an applicable local advertising cooperative was less than nine percent (9%) of gross sales, they would allocate the remaining amount for local advertising and promotion. (*Id.* at § 13.2.4.)

17.     Defendants further agreed to spend all amounts allocated for local advertising and promotion within twelve (12) weeks after their allocation. (*Id.*)

18.     Pursuant to Section 13.4.3 of the Franchise Agreement, Defendants agreed that "[a]ll promotional and marketing activities conducted by Franchisee in its local market area shall be subject to the prior approval of [PFL]."  Defendants further agreed to "submit to [PFL] (by personal delivery or certified mail, return receipt requested) for its prior approval (except with respect to prices to be charged) all local advertising, promotional and marketing plans and samples of all local advertising materials not prepared or previously approved by [PFL] or its designated agents."  (Franchise Agreement § 13.4.3.)

19.     At all relevant times PFL had a national advertising fund into which Defendants were required to pay 1.5% of weekly gross sales of the franchise businesses.[2]  At all relevant times PFL did not have a regional advertising fund for the region in which Defendants' Center is located, or a local advertising cooperative in Defendants' area. Accordingly, at all relevant times, Defendants were required to spend 7.5% of the Center's weekly gross sales on local advertising and promotion.

---

[2] Defendants acknowledged that when they signed their Franchise Agreement that "the current fee payable to the National Fund is 1.5% of weekly gross sales, but not less than $60 per week." (Franchise Agreement § 13.2.1.)

20.     Pursuant to Section 17.2 of the Franchise Agreement, Defendants agreed that in the event of any default by Defendants, Defendants "shall pay [PFL] all costs and expenses, including reasonable legal and accounting fees, incurred by [PFL] in connection with obtaining damages or injunctive or other relief for the enforcement of any provisions of [the] Agreement or for the defense of any unsuccessful action or counter claim made by [Defendants]."

21.     Under Section 22.3 of the Franchise Agreement, Defendants agreed that "[n]o failure of [PFL] to exercise any power reserved to it under this Agreement, or to insist upon compliance by Franchisee with any obligation or condition in this Agreement, and no custom or practice of the parties at variance with the terms [of the Agreement], shall constitute a waiver of [PFL's] rights to demand exact compliance with any of the terms of this Agreement."

22.     Further pursuant to Section 22.3 of the Franchise Agreement, Defendants agreed that "[w]aiver by [PFL] of any particular default shall not affect or impair [PFL's] rights with respect to any subsequent default of the same or a different nature; nor shall any delay, forbearance, or omission by [PFL] to exercise any power or right arising out of any breach or default by Franchisee of any of the terms, provisions, or covenants of this Agreement affect or impair [PFL's] rights; nor shall such constitute a waiver by [PFL] of any rights [under the Agreement] or rights to declare any subsequent breach or default."

## Defendants' Defaults

23.     PFL recently discovered, and alleges upon information and belief, that Defendants have routinely failed to make in excess of $170,000.00 in local advertising and promotional expenditures as required by the Franchise Agreement.

24.     Specifically, PFL's Area Director for the Defendants' area recently advised PFL that he has not seen Defendants make any local advertising and promotional expenditures during

the relevant time period, and he is not aware of any local advertising and promotional expenditures by Defendants during the relevant time period.  As an Area Director, he is generally aware of the local advertising and promotional activities of the PFL franchisees in his area.

25.     Additionally, at all relevant times, Defendants have not submitted to PFL any local advertising, promotional and/or marketing plans or samples of any local advertising materials that were not previously approved by PFL or its designated agents for local advertising and promotional purposes.

<u>**Count I – Breach of Contract**</u>
**(Monetary Damages)**

26.     The allegations in the preceding paragraphs are hereby incorporated by reference as if fully set forth herein.

27.     The Franchise Agreement is a valid and enforceable contract between PFL and TSH.

28.     Pursuant to a valid and enforceable Guaranty, Evans is bound by the terms and conditions of the Franchise Agreement.

29.     During the term of the Franchise Agreement, Defendants failed to make the local advertising and promotional expenditures required under the Franchise Agreement.

30.     Defendants' conduct constitutes material breaches of the Franchise Agreement.

31.     PFL has performed all conditions precedent necessary to secure Defendants' performance under the Franchise Agreement and Guaranty.

32.     As a direct and proximate result of Defendants' breaches, PFL has suffered and is continuing to suffer irreparable injury, and has incurred and is continuing to incur substantial monetary damages of over $75,000.00, in addition to contractual costs and attorneys' fees.

7

### Count II – Breach of Contract
**(Declaratory Judgment)**

33.     The allegations of the preceding paragraphs are hereby incorporated by reference as if fully set forth herein.

34.     During the term of the Franchise Agreement, Defendants failed to make the local advertising and promotional expenditures required under the Franchise Agreement.

35.     An actual and justiciable controversy exists between and among the parties to this action.

36.     Accordingly, PFL seeks a judicial declaration by this Court that Defendants' conduct constitutes material breaches of the Franchise Agreement and that Defendants are in default of the Franchise Agreement.

### Count III – Breach of Contract
**(Injunctive Relief)**

37.     The allegations of the preceding paragraphs are hereby incorporated by reference as if fully set forth herein.

38.     Defendants have breached and continue to breach the Franchise Agreement by failing to make the local advertising and promotional expenditures required under the Franchise Agreement.

39.     As a direct and proximate result of Defendants' breaches, PFL has faced and continues to face irreparable harm to its marks, brand, and franchise system due to Defendants' failure to comply with the Agreement's marketing requirements.

40.     Accordingly, PFL seeks a ruling from this Court that Defendants must comply with their marketing obligations as provided in the Franchise Agreement, including paying PFL or its designee, or spending as directed by PFL, advertising fees equal to nine percent (9%) of

Defendants' Center's weekly gross sales, and in the event Defendants' total required contribution to PFL's national advertising fund, applicable regional advertising fund, and/or applicable local advertising cooperative is less than nine percent (9%), to allocate and spend the remaining amount for local advertising and promotion

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays that this Court:

a.      Enter a declaratory judgment holding that Defendants' conduct violated the terms of the Franchise Agreement and that Defendants are thus in default of the Franchise Agreement;

b.      Enter judgment in favor of PFL against Defendants for the damages incurred by PFL as a result of Defendants' breaches of contract;

c.      Enter an injunctive order directing Defendants to comply with their marketing obligations as provided in the Franchise Agreement, including but not limited to paying PFL or its designee, or spending as directed by PFL, advertising fees equal to nine percent (9%) of their Center's weekly gross sales, and in the event Defendants' total required contribution to PFL's national advertising fund, applicable regional advertising fund, and/or applicable local advertising cooperative is less than nine percent (9%), to allocate and spend the remaining amount for local advertising and promotion;

d.      Award PFL its costs and attorneys' fees incurred in connection with this action pursuant to the Franchise Agreement; and

e.      Award PFL such other relief as this Court may deem just and proper.

Respectfully submitted,

/s/ Justin L. Sallis
Justin L. Sallis (VSB No. 82599)
Frank Sciremammano (*Pro Hac Vice* To Be Filed)
LATHROP GPM LLP

9

The Watergate – Suite 700
600 New Hampshire Avenue, N.W.
Washington, D.C. 20037
Tel:     (202) 295-2200
Fax:     (202) 295-2250
justin.sallis@lathropgpm.com
frank.sciremammano@lathropgpm.com

Dated:  June 30, 2023                          *Attorneys for Plaintiff*